[Cite as *In re L.G.*, 2016-Ohio-5918.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

| | |
|---|---|
| In re L.G., M.G., Jo.V., S.V., C.V., A.V., L.V., Ja.V. | Court of Appeals Nos. H-16-006 |
| | H-16-007 |
| | H-16-009 |
| | H-16-010 |
| | H-16-011 |
| | H-16-012 |
| | H-16-013 |
| | H-16-014 |
| | H-16-015 |
| | H-16-016 |
| | |
| | Trial Court Nos. DNA 2014 00028 |
| | DNA 2014 00029 |
| | DNA 2014 00022 |
| | DNA 2014 00023 |
| | DNA 2014 00024 |
| | DNA 2014 00025 |
| | DNA 2014 00026 |
| | DNA 2014 00027 |

**<u>DECISION AND JUDGMENT</u>**

Decided: September 21, 2016

* * * * *

Casey Lloyd Jacobs, for appellant, E.G.

Paul D. Dolce, for appellant, Je.V.

Daivia S. Kasper, Prosecuting Attorney, and Dina Shenker,
Assistant Prosecuting Attorney, for appellee.

* * * * *

**JENSEN, P.J.**

{¶ 1} This is a consolidated appeal from a judgment of the Huron County Court of Common Pleas, Juvenile Division, terminating the parental rights of the elder Jo.V., E.G., and Je.V., and awarding permanent custody of their eight children, (Jo.V., S.V., C.V., A.V., L.V., Ja.V., L.G., and M.G.) to appellee, Huron County Department of Job and Family Services (the "Department"). For the reasons that follow, we affirm.

**Factual Background and Procedural History**

{¶ 2} Appellant Je.V. ("mother") is the natural mother of Jo.V. , S.V., C.V., A.V., L.V., Ja.V., L.G., and M.G. (collectively "the children").

{¶ 3} Appellant E.G. ("father") is the natural father of the two youngest children, L.G. and M.G. The elder Jo.V. is the natural father of the six older children (Jo.V., S.V., C.V., A.V., L.V. and Ja.V.) and did not participate in the termination hearing. He has not filed a notice of appeal. Thus, our discussion and analysis will focus on the facts as they pertain to mother and father.

{¶ 4} Shortly after her birth at Fisher Titus Medical Center on January 25, 2014, M.G. was diagnosed with neonatal abstinence syndrome relating to her exposure to opiate drugs while in her mother's womb. M.G. was transferred to the Toledo Hospital for

2.

treatment and observation. Upon discharge, mother and father were given strict instructions for a methadone weaning plan, weekly checkups with her pediatrician, and follow up appointments with Home Health Care and Huron County Help Me Grow. Mother and father failed to take M.G. to multiple appointments. At one appointment the parents did keep, M.G. was vomiting and diagnosed with failure to thrive. Numerous attempts by the Department to verify that M.G. was receiving proper treatment after her discharge from the hospital were unsuccessful. Mother refused access to the home she was sharing with friends and refused access to the children.

{¶ 5} On February 24, 2014, the Department petitioned for and was granted emergency temporary custody of the children. A case plan was developed with a goal of reunification. The case plan stated three goals for mother and father: (1) successfully complete substance abuse counseling; (2) successfully complete parenting classing; and (3) "resource management/household maintenance."

{¶ 6} Once the children were placed in foster care, they were taken to a pediatrician for evaluation. The pediatrician found the children to be suffering from chronic medical, dental, and mental health conditions and developmental delays for which appropriate treatment had not been provided.

{¶ 7} At a dispositional hearing on May 1, 2014, mother and father were ordered to submit to a substance abuse assessment; successfully complete any and all recommended treatment; maintain adequate employment with sufficient income to support the family; and maintain safe, drug free, stable housing suitable for the needs of

3.

the family. Father was further ordered to successfully complete parenting classes and submit to random substance abuse screens as directed by the Department.

{¶ 8} On July 17, 2015, the Department filed a motion for permanent custody stating that "such placement is in the best interest of the children and the children cannot be placed with either of their parents within a reasonable time." The Department alleged

There has been no reported progress on the case plan by either [mother] or [father]. [Mother] did not complete a substance abuse assessment and has not participated in any type of substance abuse treatment. [Mother] did attend a few parenting classes but missed more than what was permitted and did not successfully complete the classes. * * * [Mother] reported she was employed at Save A Lot in Willard but was terminated within a month and has not provided any other employment verification."

{¶ 9} The Department further alleged that father failed to participate in parenting classes, did not undergo a substance abuse assessment, and did not participate in any substance abuse treatment. While father gained employment on three separate occasions, he was not able to maintain a job for more than a month. Father was arrested once for voluntary intoxication and once for disorderly conduct by intoxication. On separate occasions father tested positive for cocaine, benzoylecgonine, and Ultram.

{¶ 10} While mother and father obtained housing in October, 2014, they were evicted in January of the next year for nonpayment of rent. Since the beginning of the

4.

case plan, mother and father reported seven different home addresses. At the time the motion for permanent custody was filed, Mother reported that she lived with her mother in Willard, Ohio. Father last indicated that he lived with his father in Norwalk, Ohio, but refused to provide the Department with a specific address.

{¶ 11} Trial was held in February 2016.

{¶ 12} Dr. Melanie Jungblut is employed by New Beginnings Pediatrics. Prior to her testimony at trial, Dr. Jungblut received and reviewed the medical records of the children. After giving a detailed overview of each child's health issues, she opined that all of the children had been medically neglected.

{¶ 13} Sally Alexander was the court-appointed CASA volunteer guardian-ad-litem for the children in this case. Ms. Alexander testified that mother and father lived at several different addresses throughout the case. At the time of trial, mother and father were living with mother's adult brother, Grace Reed, and Reed's three children. Ms. Alexander never entered the Reed home because she felt threatened by father. Ms. Alexander did gather as much information about the home as she could from the internet.

{¶ 14} Ms. Alexander further testified that mother and father were not in a position to care for the children. Despite given two years to secure employment and a drug and alcohol free home, mother and father were unable to do so. While mother did successfully complete a required four hour parenting class, mother and father failed to complete any other counseling sessions and classes they were ordered to complete. Ms.

5.

Alexander opined that it was in the children's best interests to be placed in the permanent custody of the Department.

{¶ 15} Dr. Lisa Stanford is the Division Director of Neurobehavioral Health at Akron Children's Hospital. Dr. Stanford testified that Ja.V. needed structure and stability in order to control her current and emotional behavioral issues. She opined that regression occurred after visitation with her parents. She indicated that if the goal was not reunification, then her recommendation would be to terminate visitation to limit the emotional and medical damage to Ja.V.

{¶ 16} Tara Sturts is a Child Abuse and Neglect Investigator. Ms. Sturts testified that mother and father were not consistent with their visitations. Sometimes, mother did not attend because of outstanding warrants for her arrest. When they did show up, mother and father either screened positive for drugs or refused to submit to the screen.

{¶ 17} Mother tested positive for cocaine and heroin in May 2014. In July of that year, she tested positive for opiates and Oxycodone. In October 2015, mother testified positive for heroin. Mother tested positive for morphine on October 6, 2015.

{¶ 18} Father submitted to a substance abuse assessment on September 8, 2015, and was referred to a recovery group. However, father never attended the group or submitted to required counseling.

{¶ 19} Ms. Sturts testified, in detail, that mother and father had several different residences throughout her involvement with the case. She further testified that neither mother nor father were consistently employed.

6.

**{¶ 20}** On March 4, 2016, the trial court issued a judgment entry granting the Department's motion for permanent custody. The court found that under R.C. 2151.414(E), the children could not be placed with either of their parents within a reasonable time or should not be placed with either parent, and that under R.C. 2151.414(D)(1), a grant of permanent custody to the Department was in the children's best interest. In support of its decision, the trial court explained,

**{¶ 21}** After considering all the required factors listed in R.C. 2151.414(D)(1), the Court clearly and convincingly finds that placing all of the children in the permanent custody of [the Department] is in the children's best interest. This finding is supported by the testimony of HCDJFS social workers, the children's pediatrician, the children's pediatric neuropsychologist, the children's foster parents, probation officers, law enforcement officers, development specialists and the children's guardian ad litem. The children are all now receiving necessary treatment, regularly attending school and otherwise thriving in their respective homes. The stability experienced by the children in last two years has permitted them to confront their developmental delays and other permanent conditions and fulfill their potential in spite of their difficulties. Returning the children to the custody of their parents at any time in the foreseeable future would certainly mean a return to a pattern of missed appointments, non-compliance with treatment and overall regression.

7.

{¶ 22} Mother and father appealed and advance one assignment of error for our review.

## Assignment of Error

THE TRIAL COURT'S DECISION TO TERMINATE PARENTAL RIGHTS AND RESPONSIBILITIES WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## Standard of Review

{¶ 23} Before a trial court may terminate parental rights and award permanent custody of a child to the moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *In re R.L.*, 9th Dist. Summit Nos. 27214, 27233, 2014-Ohio-3117, ¶ 22, citing R.C. 2151.414(B)(1) and 2151.414(B)(2); *In re Williams*, 75 Ohio St.3d 95, 99, 661 N.E.2d 738 (1996).

{¶ 24} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11. The factual findings of a trial

8.

court are presumed correct since, as the trier of fact, it is in the best position to weigh the evidence and evaluate the testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988). Thus, judgments supported by some competent, credible evidence going to all essential elements of the case are not against the manifest weight of the evidence. *Id.*

{¶ 25} Here, the trial court found that the first prong of the permanent custody test was satisfied as to appellants by a finding that the children could not be placed with either parent in a reasonable time or should not be placed with either parent. *See* R.C. 2151.414(B)(1)(a). A trial court may base its decision on the first prong upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 50; *In re William S.*, 75 Ohio St.3d 95, 99 661 N.E.2d 738 (1996). Here, the trial court found that R.C. 2151.414(E)(1), (2), (4), and (8) applied to mother and father.

### Failure to Remedy Conditions

{¶ 26} In regard to R.C. 2151.414(E)(1), mother and father first argue that the Department failed to present sufficient evidence to demonstrate the home they were living in at the time of the hearing was not suitable for the family.

9.

**{¶ 27}** R.C. 2151.414(E) provides, in relevant part:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

**{¶ 28}** Throughout their involvement with the Department, the children lacked consistent attendance at school due to the family's housing issues and frequent moves.

**{¶ 29}** At the time of the hearing, mother and father were living in a house rented by the children's maternal grandmother. The Department did not provide any testimony related to the size or condition of the upstairs of the home. Neither the guardian ad litem nor the Department's child abuse and neglect investigator ever went into the home. And, while the Department never gained access to the entire living area of the home, they concluded that the home provided inadequate space for the 15 individuals (4 adults and 11 children) residing there. The owner of the home indicated the home contained just

10.

over 1100 square feet of living space and had three bedrooms. The record contains some competent, credible evidence supporting the trial court's finding that mother and father continuously and repeatedly failed to provide suitable stable housing for the children.

{¶ 30} In their second argument under R.C. 2151.414(E)(1), mother and father argue that the Department failed to use diligent efforts in assisting the parents in remedying the housing problem. Specifically, they assert that the only assistance the parents were given was a referral to Metropolitan Housing Authority. R.C. 2151.414(E)(1) requires "reasonable case planning and diligent efforts by the agency to assist the parents" as part of a determination of whether the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. After our review of the record, we find that there is some competent, credible evidence supporting the trial court's inferred finding that the housing authority referral constitutes reasonable case planning and diligent efforts on behalf of the Department.

### The Parents' Chemical Dependency

{¶ 31} In regard to R.C. 2151.414(E)(2), father argues that he tested negative for all illegal substances for the 12 months prior to trial and that the trial court's finding that he suffered from chemical dependency that rendered him unable to provide for his children was erroneous. In response, appellee asserts that when father stopped using drugs, he started abusing alcohol and accumulated several disorderly conduct charges relating to his alcohol addiction.

11.

{¶ 32} In turn, mother argues that her own health, transportation, and scheduling issues contributed to her not completing substance abuse counseling by the time of trial. She asserts the Department failed to demonstrate "the effect of any chemical dependency of Mother on the Children." In response, appellee asserts

{¶ 33} R.C. 2151.414(E) provides, in relevant part:

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

{¶ 34} The record contains some competent, credible evidence to support the trial court's finding that mother and father suffer from chemical dependency "that is so severe that it renders them unable to provide an adequate permanent home for the child[ren] at the present time and, as anticipated, within one year." R.C. 2151.414(E)(2).

{¶ 35} While father's drug abuse may have subsided during the Department's involvement with the case, his use of alcohol did not. Officer Zach O'Neil testified that on April 24, 2015, he picked up father after he received a complaint about a subject laying in a tree lawn. Officer O'Neil detected a strong odor of alcohol on father's breath and a bottle of vodka inside his coat pocket. Officer Todd Corbin testified that on July 3,

12.

2015, he arrested a "highly intoxicated" father for disorderly conduct. Once father was taken to the Huron County Jail, his behavior became agitated. Father urinated on the building's intercom system. Futhermore, father was required by the case plan to attend a recovery group, but he did not participate after his September 8, 2015 assessment.

{¶ 36} Throughout the case, mother tested positive for heroin, morphine, Tramadol, and Ultram. Mother attended two counseling sessions and tested positive for drugs at both sessions. She missed several counseling sessions.

{¶ 37} After our review of the record, we find that there is some competent, credible evidence supporting the trial court's finding that mother and father suffered from chronic dependency and would not be able to provide an adequate permanent home for the children within one year of the trial.

### The Parents' Lack of Commitment Toward the Children

{¶ 38} Mother and father contest the trial court's findings that they have historically displayed a "lack of commitment toward the children," and a finding under R.C. 2151.414(E)(8) that mother and father "withheld medical treatment" from the children.

{¶ 39} R.C. 2151.414(E) provides, in relevant part:

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

13.

* * *

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

{¶ 40} Dr. Jungblut's testified that the parents' response to the children's developmental delays, and significant medical and dental conditions was inadequate. Thus, some competent, credible evidence exists to support the trial court's findings in relation to R.C. 2151.414(E)(4) and (8).

{¶ 41} In regard to the second prong of the permanent custody test, the trial court found that it was in the best interest for all the children to be placed into the permanent custody of the Department. Mother and father did not specifically challenge this finding. Upon our review of the record, we find some competent, credible evidence supports the trial court's finding that placing the children in the permanent custody of the Department is in their best interest. During the two years the children were in foster care, they received necessary medical and dental care, they attend school regularly, and are thriving in their respective homes. Accordingly, mother and father's sole assignment of error is not well-taken.

14.

**{¶ 42}** For the foregoing reasons, the judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the costs of this appeal in accordance with App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.      _____
                    JUDGE

Thomas J. Osowik, J.

                  _____
James D. Jensen, P.J.          JUDGE
CONCUR.

                  _____
                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.